### CARROLL v. TUCKER et al.

(Common Pleas of New York City and County, General Term. February 6,. 1893.)

1. REAL-ESTATE AGENTS—EMPLOYMENT—COMMISSIONS.

On an issue as to whether plaintiff was the agent of defendants, in selling certain land for them, or only the subagent for T., who had been employed to. sell the land, T. testified that they were both brokers in the matter, and that there was an implied understanding that they would divide commissions. Plaintiff testified that T. agreed to pay him a commission to sell the land, and it further appeared that the bill which plaintiff presented to defendants was for only one half the commissions. *Held*, that plaintiff was merely a subagent. of T.. and that defendants were not liable to him for his commissions.

2. SAME—DELEGATION OF AUTHORITY.

Authority given an agent "to take any steps necessary to sell" property does not empower him to employ another broker to make such sale.

3. SAME—EVIDENCE.

It appearing that plaintiff had been employed without authority, the mere fact that defendants afterwards ratified the sale does not estop them from denying his authority to make the sale, and he must look to T. for his compensation.

4. NONSUIT—SCINTILLA OF EVIDENCE.

A nonsuit should be granted where the finding is supported only by a scintilla of evidence.

Appeal from city court, general term.

Action by David H. Carroll against Charles Tucker and others to recover commissions for the sale of certain land for defendants. From a judgment of the general term of the city court affirming a judgment entered on a verdict in favor of plaintiff, defendants appeal. Reversed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Chas. P. & Wm. W. Buckley, (John Brooks Leavitt, of counsel,) for appellants.

Lyman L. Settel, (John F. McIntyre, of counsel,) for respondent.

PRYOR, J. At the close of plaintiff's case the defendants moved a dismissal of the complaint on the grounds that the plaintiff had no authority as broker of the defendants, and was not the procuring cause of the sale; and the motion was renewed upon all the evidence. We are of the opinion that enough was shown to authorize the inference that the sale was effected through the instrumentality of the plaintiff, but whether he acted upon the employment of the defendants is a more difficult question. It is a conceded fact that the plaintiff was not retained directly by the defendants, but the contention is that he was commissioned.

by their agent, Thompson. And so he was, without doubt; but whether as subagent of Thompson, or as independent broker for the defendants, is a point upon which, in a measure, the appeal depends. Thompson was the broker whom the defendants employed; and if, to promote the sale, he engaged the plaintiff, as his auxiliary, on an agreement to divide commissions, then, as subagent, plaintiff must look only to Thompson for compensation. Thompson testifies: "We were both brokers in the matter. There was a sort of implied understanding between brokers that I would divide commissions with him." Plaintiff says Thompson "told me he would pay me a commission,"—a commission, not the commission; and he, not the defendants, would pay it. Obviously the plaintiff's own version of the transaction is in harmony with Thompson's statement that he was to divide his commission with the plaintiff. But, that the plaintiff understood he was only to share Thompson's compensation is cleared of all doubt by the fact that he presented a bill, and threatened suit, for only half the commission. True, the claim for half commission was asserted against the defendants, but that only shows plaintiff's mistake as to the party legally liable to him. True, also, that the next day plaintiff's attorney made demand of the full commission; but that only shows the attorney's skill in trying to nullify the effect of the client's admission. Our conclusion is that, upon the uncontradicted evidence, plaintiff was employed by Thompson to assist him in the negotiation on an agreement to divide his commission; and that so, as subagent, plaintiff sustained no such relation to the defendants as made them liable for his compensation. 1 Amer. & Eng. Enc. Law, 395.

Assuming, however, that Thompson employed plaintiff as broker for the defendants, it was incumbent upon plaintiff to prove that Thompson had authority so to employ him. Without specific authority from his principal, an agent has no power to delegate his trust. Lewis v. Ingersoll, 3 Abb. Dec. 55; Newton v. Bronson, 13 N. Y. 587; Hicks v. Dorn, 9 Abb. Pr. (N. S.) 53; Merrill v. Trust Co. 24 Hun, 300; Lyon v. Jerome, 26 Wend. 485. Indisputably, the office of broker involves personal confidence and discretion. Bonwell v. Howes, (Com. Pl. N. Y.) 2 N. Y. Supp. 717. Did the defendants empower their broker, Thompson, to substitute another in his stead? Both Thompson and defendant Arthur C. Tucker deny the communication of any such power. But plaintiff relies on an alleged admission of Tucker to the contrary. A day or two before commencing this action, plaintiff's attorney called on Mr. Tucker for the purpose of ascertaining "whether Mr. Thompson had authority to bind the Tuckers, or to sell, and employ a broker." Mr. Arthur C. Tucker said "that Mr. Thompson was authorized to take any steps necessary to sell." As broker employed to sell, Thompson, of course, had authority to take the steps necessary to that end. To have denied him such power would have been to render his agency frustrate. But surely authority to take the steps necessary to a sale does not involve authority to employ another broker; for, if one broker, then why not a second, and a third, and so on indefinitely, until the principal be crushed under the accumulated weight of countless commissions? But,

the person whom the attorney had the precaution to take with him as a corroborative witness fails to sustain him, saying that Tucker's words were that Thompson "had full authority to sell." This is no more than a declaration that Thompson was a broker to sell. The learned trial judge, in his charge, misapprehended the effect of the testimony when he told the jury that Tucker stated to the attorney "that Thompson had full authority to employ brokers for the sale of the property." On a critical review of the case, we see that, at most, the finding that the defendants authorized Thompson to retain the plaintiff is sustained only by a scintilla of evidence; and this is ineffectual against a motion to nonsuit. Dwight v. Insurance Co., 103 N. Y. 341, 8 N. E. Rep. 654.

The respondent argues, however, that, by consummating the sale which he negotiated, the appellants are estopped to question his authority, upon the ground that the enjoyment of the fruits of an agent's act charges the principal with responsibility. The principle upon which the respondent relies is of recognized and salutary operation, but he misapprehends its import and application. The rule, as propounded in a leading case of this state, is that "when an agent, acting within the scope of his actual authority, perpetrates a fraud for the benefit of his principal, and the latter receives the fruits of it, he thereby adopts the fraudulent acts of his agent." Smith v. Tracy, 36 N. Y. 79; Mayer v. Dean, 115 N. Y. 556, 22 N. E. Rep. 261. Here the act of Thompson in substituting plaintiff as broker, if there were such substitution, was beyond the scope of Thompson's authority; and the transaction, the enjoyment of the fruits of which is supposed to estop the appellants, was not the transaction of their agent, but of a stranger. The rule was never applied, and in reason can never be applied, so as to validate a delegation of his agency by a broker, else the principal would be at the mercy of his broker, and might be burdened with liability to as many deputies as the broker should choose to appoint. The law is settled otherwise. "Where the subagent has been employed without authority, and his acts are afterwards ratified, he can recover no compensation from the principal, but must look to the agent." 1 Amer. & Eng. Enc. Law, 395.

We conclude, therefore, that upon the uncontroverted evidence the appellants are not responsible for the employment of the plaintiff, and are under no obligation to compensate him. Our conviction that the respondent's claim is without equity reconciles us the more readily to the defeat of his judgment on legal grounds. Judgment reversed, and new trial ordered, costs to abide the event. All concur.